IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMJID SHAH,  )  | |
|        Petitioner,  ) | |
| vs.  ) | No. 3:20-CV-994-C-BH |
| ) | |
| CHAD WOLF, Acting Secretary of  ) | |
| the U.S. Department of Homeland  ) | |
| Security, et al.,  ) | |
|        Respondents.  ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is the *Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief*, filed April 22, 2020 (doc. 1). Based on the relevant findings and applicable law, the petitioner's claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), should be **DENIED,** and his conditions of confinement claim should be **DISMISSED** for lack of jurisdiction. *Petitioner's Emergency Motion for Temporary Restraining Order,* filed April 22, 2020 (doc. 3), should be **DENIED**.

**I. BACKGROUND**

Amjid Shah (Petitioner), a 47-year-old citizen of Pakistan detained by the United States Immigration and Customs Enforcement (ICE) agency at Prairieland Detention Center (PDC), challenges his post-final-order-of-removal detention by ICE under 28 U.S.C. § 2241 as unconstitutional. (*See* doc. 1.) The respondents are ICE; Chad Wolf, in his official capacity as Acting Secretary of the U.S. Department of Homeland Security; Matthew T. Albence, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director for ICE; Marc Moore, in his official capacity as Field Office Director for ICE's Dallas Field Office; and Jimmy

---

[1] By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation.

Johnson, in his official capacity as Warden of PDC (Respondents). (*See id.* at 6-7.)[2] Petitioner also seeks a temporary restraining order (TRO) for his immediate release under his own recognizance, or alternatively, placement in a conditional community-based alternative to detention. (*See* doc. 3.)

Petitioner entered the United States without presenting himself for inspection on or around July 7, 2002. (*See* doc. 1-2 at 26.) While in the United States, he was convicted of: (1) theft in violation of TX PC 31.03(e)(3)(A) in 2011; (2) possession of a gambling device in violation of TX PC 47.06 in 2013; and (3) being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2) in 2017, for which he was sentenced to 33 months' imprisonment. (*See* doc. 1-2 at 15-23; doc. 12 at 7-8.) Removal proceedings were initiated against him, and he was ordered removed from the United States by an immigration judge on March 13, 2019. (*See* doc. 1-2 at 24-25.) Petitioner's appeal of the removal determination was dismissed by the Board of Immigration Appeals (BIA) on September 5, 2019, and his removal order became final on that date. (*See* doc. 12 at 14-15.)

On January 27, 2020, the Government of Pakistan informed ICE that Petitioner's Pakistani citizenship had been verified. (*See* doc. 12 at 12.) The Consulate of Pakistan in Houston, Texas, issued an emergency travel document expiring May 19, 2020 for Petitioner on February 19, 2020. (*See id.*) On March 6, 2020, ICE issued its "Decision to Continue Detention," based on its review of Petitioner's records, personal interview, any information submitted to ICE, and the applicable law. (*See* doc. 1-2 at 26.)

Also in early March 2020, many countries across the world, including Pakistan, suspended or restricted international travel, including removals, in light of the global spread of COVID-19.

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(*See* doc. 12 at 12.) According to ICE, Pakistan has permitted limited flights since March 21, 2020. (*See id.*) ICE was advised by the Consulate of Pakistan in Houston, Texas, that the validity of Petitioner's travel documents would be extended given the increased flight cancellations due to COVID-19. (*See id.* at 13.)

## II.  DUE PROCESS

Petitioner contends that his indefinite detention and conditions of confinement violate his due process rights.

### A.  Prolonged Detention

Petitioner initially alleges a violation of his due process right against indefinite detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*.

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. *See* 8 U.S.C. § 1231(a)(1)(A). During the "removal period," the alien must be detained. *See id.* § 1231(a)(2). After the expiration of the removal period, the government may continue to detain the alien or release him subject to conditions of release. *Id.* § 1231(a)(6). An alien who is detained under § 1231(a)(6) may be detained only for "a period reasonably necessary to bring about that alien's removal from the United States" and may not be detained indefinitely. *Zadvydas*, 533 U.S. at 689; *see also Clark v. Martinez,* 543 U.S. 371, 386 (2005) (applying *Zadvydas* to all categories of removal aliens, including inadmissible aliens under orders of removal). In order to facilitate "uniform administration in the federal courts," the Supreme Court recognized a six-month "presumptively reasonable period of detention," which the Fifth Circuit subsequently interpreted as commencing from the start of the removal period, i.e., the date the final order of deportation became final. *Zadvydas*, 533 U.S. at 701; *see also Zadvydas v. Davis*, 285 F.3d 398, 403 (5th Cir. 2002).

Here, Petitioner claims he has been in continuous federal custody since January of 2019 and has remained in custody for over six months since his removal order became final on September 5, 2019. (*See* doc. 1 at 12-13; doc. 1-2 at 5.) The parties do not dispute that the six-month presumptive period for Petitioner's detention expired on or around March 5, 2020. (*See* doc. 12 at 14-15.) The expiration of this six-month presumptive period does not necessarily entitle Petitioner to habeas relief, however.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. The relief sought by Petitioner under § 1231(a)(6) is dependent on whether there is a significant likelihood of removal in the reasonably foreseeable future. *See Saeku v. Johnson*, No. 1:16-CV-155-O, 2017 WL 4075058, at *3 (N.D. Tex. Sept. 14, 2017) (after establishing post-removal order custody exceeding six months, "the alien must provide a good reason to believe that there is no significant likelihood of removal in the foreseeable future.") (citing *Apau v. Ashcroft*, No. 3:02-CV-2652-D, 2003 WL 21801154, at *2 (N.D. Tex. June 17, 2003)).

    1.    *Significant Likelihood of Removal*

To carry his burden under *Zadvydas*, Petitioner "must demonstrate that 'the circumstances of his status,' or the existence of 'particular individual barriers to his repatriation' to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Idowu v. Ridge*, No. 3:03-CV-1293-R, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (quoting *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). Speculation and

conjecture are not sufficient to carry this burden; nor is a "lack of visible progress" in his removal sufficient in and of itself to show no significant likelihood of removal in the reasonably foreseeable future. *Id.* (citation and internal quotation marks omitted).

Petitioner claims that there is no significant likelihood of his removal in the reasonably foreseeable future. He was allegedly notified by ICE in March 2020 that the Government of Pakistan had provided travel documents for him, but he has not since been notified that it will still accept the travel documents in the wake of the spread of COVID-19, or that flight arrangements were made. (*See* doc. 1-2 at 5.) He argues that the pre-pandemic travel authorization issued by the Government of Pakistan is "almost certainly obsolete" and of "questionable validity" in light of the spread of COVID-19 and Pakistan's suspension of all international and domestic flights. (*See* doc. 1 at 13, 17.)

Petitioner's arguments that his travel documents are obsolete and of questionable validity in the wake of COVID-19 is supported only by speculation and conjecture, neither of which suffice to carry his burden under *Zadvydas*. *See Idowu*, 2003 WL 21805198, at *4. At most, the lack of notice reflects a "lack of visible progress" from his perspective which "simply shows that the bureaucratic gears of the [ICE] are slowly grinding away." *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001); *see also Idowu*, 2003 WL 21805198, at *4 ("Speculation and conjecture as to reasons for governmental inaction do not suffice to carry the petitioner's burden."). Petitioner does not present a basis for finding good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

Petitioner also argues his prolonged detention is unlawful under *Zadvydas* because of Pakistan's suspension on international travel due to COVID-19. The parties do not appear to dispute that Pakistan suspended certain international travel in March 2020 due to COVID-19. (*See* docs.

5

1 at 13, 10 at 5, 12 at 12). Petitioner cited a report from the Pakistan Civil Aviation Authority that this suspension on international travel would extend through at least April 30, 2020. (*See* doc. 1 at 13.) Petitioner has not supplemented the record with any update on the status of international travel to Pakistan after that date. Aside from this circumstance of Pakistan's suspension of international travel, which affects all Pakistani nationals abroad at the time enforcement of the suspension began, Petitioner has not identified any impediments to his removal once the travel restrictions are loosened or lifted. Accordingly, he has not shown good reason to believe his removal would not take place in the reasonably foreseeable future.

Additionally, to the extent Petitioner claims that his lack of convictions for violent crimes supports habeas relief under § 1231(a)(6) and *Zadvydas* (*see* doc. 1 at 17), the Supreme Court recognized in *Clark* that the ruling of *Zadvydas* applies to all categories of aliens subject to § 1231(a)(6), including inadmissible aliens such as Petitioner. *See Clark*, 543 U.S. at 386. He has articulated no factual basis or cited any supporting case law to support a finding that his criminal history bears on whether there is a significant likelihood of removal in the reasonably foreseeable future.

Because Petitioner has failed to carry his burden, he is not entitled to habeas relief on his *Zadvydas* claim.

   2.   *Rebuttal Evidence*

Even assuming, for purposes of this motion only, that Petitioner carried his burden to demonstrate good reason to believe that there is no significant likelihood of removal in the foreseeable future, his claim under *Zadvydas* still fails. Respondents provided evidence that the validity of Petitioner's travel document would be extended by the Consulate of Pakistan given the flight cancellations and travel restrictions imposed due to COVID-19, that the Government of

6

Pakistan has permitted limited flights since March 21, 2020, and that it had extended its suspension on international travel through May 15, 2020. (*See id.* at 12-13.) ICE additionally indicates it anticipates arranging a charter flight to remove Petitioner to Pakistan, for which Pakistan requires at least 30 days advance notice. (*See id.* at 13.) It also states that negotiations are ongoing "to ensure that Pakistan continue[s] to accept their nationals, with the goal of returning to a more routine schedule of removal flights as soon as possible." (*See id.*) These statements are sufficient to rebut the "good reason" proffered by Petitioner. *See Ramirez v. Searls*, No. 20-CV-6018 (CJS), 2020 WL 2748203, at *3 (W.D.N.Y. May 27, 2020) (finding government rebutted "good reason" under *Zadvydas* where government obtained travel documents in March and indicated it planned to remove petitioner to Venezuela in June 2020, "provided that it can do so consistent with any Covid-19 travel restrictions."); *Jaime F. v. Barr*, No. 19-20706 (ES), 2020 WL 2316437, at *5 (D.N.J. May 11, 2020) ("There are no impediments to prevent Petitioner's removal as soon as the national quarantine in Venezuela ends, and . . . Petitioner has pointed to no evidence to suggest otherwise."); *Francis S.M. v. Decker*, No. 19-8053(MCA), 2020 WL 1956053, at *4 (D.N.J. Apr. 23, 2020) (denying habeas relief under *Zadvydas* despite flight restrictions to India given ICE's stated intent to schedule Petitioner for earliest available flight to India).

Petitioner is not entitled to habeas relief on his *Zadvydas* claim, and it should be dismissed without prejudice. The denial of his *Zadvydas* claim should not preclude him from filing an amended petition based on new information about the status of Pakistan's suspension of international travel, or Respondents' ability to remove him in the reasonably foreseeable future as events relating to the COVID-19 pandemic continue to develop.

**B.     Conditions of Confinement**

Petitioner also claims that the conditions of his confinement amount to punitive civil

7

detention and therefore violate the due process clause of the Fifth Amendment. He asserts that his age and underlying health conditions—chronic diabetes and hypertension—make him "uniquely vulnerable to becoming seriously ill or dying from COVID-19," and, "his confinement places him at serious risk of being infected with COVID-19 and Respondents are being deliberately indifferent to this critical safety concern." (doc. 1 at 2, 18.) He argues that immediate release "is the only means for him to avoid infection by a lethal virus with no vaccine or cure." (*Id.* at 5.)

The Supreme Court of the United States has left open "the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself." *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979); *see also Preiser v. Rodriguez*, 411 U.S. 475 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal. But we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us."); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017) ("we have left open the question whether [post-9/11 immigration detainees in a *Bivens* action] might be able to challenge their confinement conditions via a petition for writ of habeas corpus."). Nor has the Fifth Circuit interpreted the Supreme Court's acknowledgment of this open question to generally permit § 2241 claims raising conditions of confinement violations. *See, e.g.*, *Livas v. Myers*, ____ F. Supp. 3d ___, No. 2:20-CV-00422, 2020 WL 1939583, at *8 (W.D. La. Apr. 22, 2020) ("Neither party nor this Court found a single precedential case in the Fifth Circuit interpreting [*Preiser*, 411 U.S. 475, *Wolfish*, 441 U.S. 520, and *Ziglar*, 137 S. Ct. 1843] and allowing conditions of confinement claims to be brought under § 2241.").

A small number of courts within this circuit have granted habeas relief under § 2241 to

immigration detainees with underlying health conditions who seek release based on their conditions of confinement in the wake of the COVID-19 pandemic. *See Vazquez Barrera v. Wolf*, ___ F. Supp. 3d ___, No. 4:20-CV-1241, 2020 WL 1904497, at *8 (S.D. Tex. Apr. 17, 2020); *Dada v. Witte*, No. 1:20-CV-00458, 2020 WL 2614616, at *3 (W.D. La. May 22, 2020). This district court, as well as at least one other in this circuit, have concluded otherwise, finding that § 2241 relief is not available to immigration detainees who allege unconstitutional conditions of confinement under the Fifth Amendment. *See Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1815691, at *3-6 (S.D. Tex. Apr. 9, 2020); *Umarbaev v. Moore*, No. 3:20-cv-1279-B-BN, 2020 WL 3051448, at *3-5 (N.D. Tex. June 6, 2020) ("But at least one other district court in this circuit has found that Section 2241 does not allow an immigration detainee to seek release based on a challege to the conditions of his [confinement] under the Due Process Clause."). The same conclusion was reached in an analogous petition involving habeas relief sought by state pretrial detainees based on the plaintiffs' conditions of confinement in light of the spread of COVID-19:

> [H]abeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody, and it cannot be used properly for any other purpose. An inmate is not entitled to relief in a habeas corpus petition based on civil rights claims related to the conditions of his confinement.

*Sanchez v. Brown*, No. 3:20-cv-00832-E, 2020 WL 2615931, at *12 (N.D. Tex. May 22, 2020) (dismissing § 2241 petitions for lack of jurisdiction where plaintiffs sought release due to jail conditions caused by COVID-19) (internal citations omitted); *cf. Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017) (recognizing the "instructive principle . . . that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under § 1983.").

The Fifth Circuit, noting that the distinction between a proper § 1983 conditions of

9

confinement claim and a habeas petition for release is "blurry" when the detainee "challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody," developed a "simple, bright-line rule for resolving such questions." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). Specifically, "If 'a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release,' the proper vehicle is a § 1983 suit." *Id.* at 820-21 (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam)).

The appropriate remedy in the event a petitioner successfully established a violation of his Fifth Amendment due process rights based on his conditions of confinement would be to order "the discontinuance of a practice or to require the correction of an unconstitutional condition," not accelerated release. *Lineberry v. United States*, 380 F. App'x 452, 453 (5th Cir. 2010) (per curiam) (involving prisoner claim of confinement conditions constituting cruel and unusual punishment); *see also Umarbaev*, 2020 WL 3051448, at *4 (discussing *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990) and dismissing immigration detainees' § 2241 petition for lack of jurisdiction). A petitioner cannot simply transform a conditions-of-confinement claim into a habeas claim by, as here, requesting the habeas remedy of release and claiming the unconstitutional condition of confinement is the confinement itself. *See Archilla v. Witte*, No. 4:20-cv-00596-RDP-JHE, 2020 WL 2513648, at *12-16 (N.D. Ala. May 15, 2020) ("tacking a traditional habeas remedy on to a prototypical conditions-of-confinement claim does not convert that classic civil rights claim into a habeas claim."); *Umarbaev*, 2020 WL 3051448, at *4 (citing analogous prisoner cases challenging conditions of confinement in habeas context).

Because Petitioner ultimately challenges the conditions of his confinement and the appropriate remedy for which—i.e., discontinuance of the procedure or cessation of the unconstitutional conduct—would not result in Petitioner's accelerated release, § 2241 is not the

10

proper avenue for the relief sought.³ Accordingly, the petition should be denied for lack of jurisdiction as to Petitioner's conditions of confinement claim.

### III.  TEMPORARY RESTRAINING ORDER

Petitioner also seeks a TRO in this case, arguing that he has satisfied the standards for such relief as set forth in *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). (*See* doc. 3 at 7-8.) In *Prichard*, the Fifth Circuit Court of Appeals stated that:

> such extraordinary relief would issue only where (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

812 F.2d at 993; *see also* Fed. R. Civ. P. 65.  "The function of a preliminary injunction is merely to preserve the status quo until the merits of a case can be adjudicated." *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975). For the same reasons it has been recommended that Petitioner's habeas petition be denied or dismissed, Petitioner cannot establish the first element necessary to obtain injunctive relief—a substantial likelihood he will prevail on the merits. His motion for a temporary restraining order should therefore be denied.

### IV.  RECOMMENDATION

Petitioner's *Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief* should be denied without prejudice as to his *Zadvydas* claim, and dismissed without prejudice for lack of jurisdiction as to his conditions of

---

³To the extent Petitioner seeks to raise a claim directly under the Fifth Amendment of the Constitution, his allegations do not suffice to show a "notable exception" warranting a deviation from the hesitancy of federal courts generally, and the Fifth Circuit specifically, "to find causes of action arising directly from the Constitution," particularly given the availability of alternative remedies for Petitioner to challenge his conditions of confinement. *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980); *see also Umarbaev*, 2020 WL 3051448, at *4-5 (noting availability of Administrative Procedures Act for immigration detainee petitioners to challenge conditions of confinement).

confinement claim. *Petitioner's Emergency Motion for Temporary Restraining Order* should be denied.

**SIGNED on this 13th day of July, 2020.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE